# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GORSS MOTELS INC.,
     *Plaintiff*,

v.

SPRINT COMMUNICATIONS COMPANY,
L.P. *et al.*,
     *Defendants*.

No. 3:17-cv-546 (JAM)

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Junk Fax Prevention Act is one of many federal consumer protection laws, and it generally prohibits the transmission of unsolicited advertising faxes while allowing for a private right of action against its violators. *See* 47 U.S.C. § 227(b)(1)(C). Connecticut has its own similar statute. *See* Conn. Gen. Stat. § 52-570c(a).

Plaintiff Gorss Motels Inc. ("Gorss") has filed this lawsuit against defendant Sprint Solutions, Inc. ("Sprint") alleging claims under both these laws stemming from nine fax advertisements that Gorss received from 2013 to 2015. Gorss's lawsuit against Sprint is among many junk fax lawsuits that Gorss has filed against multiple defendants in this District and elsewhere. Sprint now moves for summary judgment. Doc. #64. I will grant the motion for summary judgment as to Gorss's state law claims but deny it as to Gorss's federal law claims.

### BACKGROUND

The following facts are drawn from the parties' statements of undisputed material facts. Docs. #66, #75, #84. Gorss entered into a twenty-year franchise agreement in 1988 to operate a Super 8 motel in Cromwell, Connecticut. The Super 8 motels were a subsidiary of the Wyndham Hotel Group ("Wyndham"). The parties amended the franchise agreement in 2009 to extend the

franchise to 2014, and then in September 2014 they entered into a new franchise agreement extending the term of the franchise until the end of Gorss's motel business in 2016.

Gorss had one fax machine, located behind the front desk of the motel, and furnished its fax number to Wyndham in the course of its regular franchise business dealings. Gorss's fax number was also published in a Super 8 motel directory. Sprint was one of Wyndham's approved suppliers for its motel franchises, and Gorss used Sprint Communications Company (an affiliate of defendant Sprint Solutions Inc.) for its long-distance telephone services.

On various dates from April 2013 to August 2015, Gorss received nine faxes that advertised Sprint's telephone products and services. Four of these faxes came from a telephone number (646-448-8111) that was assigned to Sprint. These four faxes did not contain any information about how Gorss might "opt out" from receiving more faxes.

The other five were sent from a telephone number that was operated by a company known as Westfax, Inc., which had a relationship with Wyndham and which sent the faxes as part of Wyndham's promotional activities on behalf of its approved suppliers like Sprint. In contrast to the four faxes that came from a number assigned to Sprint, these five faxes from Westfax, Inc. included advisories about how Gorss could opt out from receiving such faxes.

Gorss filed this class action lawsuit in 2017 alleging that the nine faxes it received were sent in violation of both federal and state junk fax prevention laws. Doc. #25 (Third Amended Class Action Complaint); Doc. #25-1 (copies of nine faxes).

## DISCUSSION

The principles governing the review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*); *Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).

The Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, makes it unlawful to "use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). A "sender" within the meaning of this provision includes "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10). The Act allows for a private right of action by a recipient of an unsolicited fax advertisement against the sender for its violation. *See* 47 U.S.C. § 227(b)(3).

Similarly, Connecticut law provides that "[n]o person shall use a machine that electronically transmits facsimiles through connection with a telephone network … to transmit unsolicited advertising material." Conn. Gen. Stat. § 52-570c(a). The Connecticut law also provides for a private civil action in the event of a violation. Conn. Gen. Stat. § 52-570c(d).

Sprint moves for summary judgment on several grounds. I will discuss each in turn.

### The "unsolicited" fax requirement

Sprint argues that all nine of the faxes at issue were not "unsolicited" and therefore fall outside the scope of the federal Junk Fax Prevention Act. The Act bars only "unsolicited" fax

advertisements and defines an "unsolicited advertisement" to mean "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person *without that person's prior express invitation or permission*, in writing or otherwise." 47 U.S.C. § 227(a)(5) (emphasis added).

Sprint argues that Gorss gave its prior express invitation or permission to receive fax advertisements because Gorss at various times gave Wyndham its fax number for general business purposes. But the fact that Gorss freely gave out its fax number is not enough, without more, to conclude that Gorss expressly invited or gave permission to anyone to bombard it with fax advertisements. As the FCC has made clear, "[e]xpress permission to receive a faxed ad requires that the consumer understand that *by providing a fax number, he or she is agreeing to receive faxed advertisements*." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 Fed. Reg. 44144, 44168, 2003 WL 21713245 (F.C.C. 2003) (emphasis added).

Thus, for example, if Sprint could point to some document in which Gorss itself agreed to receive fax advertisements or was put on notice that by furnishing its fax number it was agreeing to receive fax advertisements, then Sprint could establish that Gorss gave the express permission that the Act requires. *See, e.g.*, *Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.*, 2009 WL 602019, at *2 (W.D. Wis. 2009) (advertising fax not unsolicited where plaintiff provided fax number and signed seminar enrollment form that stated, in block capitals, "providing your fax number constitutes an express invitation to send you fax advertisements about future Lorman seminars"). But Sprint does not point to any such evidence.

Sprint notes that Gorss's fax number was published in Super 8 motel directories. But "the fact that [a] facsimile number was made available in a directory, advertisement or website does

not alone entitle a person to send a facsimile advertisement to that number." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 21 F.C.C.R. 3787, 3796, 2006 WL 901720 (F.C.C. 2006); *see also CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) (same).

Sprint further notes that another entity in the Sprint family of companies, Sprint Communications Company, was Gorss's long distance telephone service provider. But this says nothing about whether Gorss in turn agreed that any Sprint entity could send fax advertisements. It is likewise irrelevant that Gorss's owner went to trade show conferences where he swiped his badge at Sprint promotional booths, because this again does not show that he invited or gave permission to Sprint to send fax advertisements.

Sprint otherwise relies on various clauses in the franchise agreements and related documents that Gorss signed between 1988 and 2014. None of these documents were agreements between Gorss and Sprint, and the parties hotly dispute whether any invitation or permission that Gorss may have given to a third party (such as Wyndham or Super 8 motels) would be effective to allow Sprint to send fax advertisements. I need not resolve this dispute because nothing in the numerous franchise-related documents that Gorss signed gave an express invitation or permission for *anyone* to target Gorss's fax machine with advertisements.

Sprint relies most heavily on the terms of the 2014 Franchise Agreement. But this agreement was signed in September 2014, which was *after* seven of the nine faxes that are at issue in this case had already been sent. So anything in the 2014 Franchise Agreement is irrelevant to all but the last two faxes at issue in the complaint.

Sprint's argument also fails as to those two faxes. Sprint relies on two sentences from Paragraph 4.4 of the 2014 Franchise Agreement which state that "[w]e may offer optional

assistance to you with purchasing items used at or in the Facility" and that "[o]ur affiliates may offer this service on our behalf."[1] According to Sprint, this language constitutes express permission for Wyndham or its "affiliates" to fax advertisements to Gorss. The problem, however, is that Sprint concedes that it is *not* an "affiliate" of Wyndham. Doc. #109 at 2. Moreover, the fact that Paragraph 4.4 goes on to separately reference "vendors" and "suppliers" makes clear a distinction between an "affiliate" of Wyndham (*i.e.*, those who are privileged to "offer optional assistance to [franchisees] with purchasing items") and mere "vendors" and "suppliers" like Sprint, who impliedly are not.

Even if Sprint were an "affiliate" for purposes of this agreement, the "service" at issue in Paragraph 4.4 is to "offer optional assistance to you with purchasing items." No reasonable person would understand that, by agreeing to this "service," Gorss was agreeing to have its fax machine flooded with advertisements. Indeed, the specified "service" is one of "optional assistance" with "purchasing items." A reasonable person would not mistake the term "assistance" for "advertisement," and an offer of "optional" assistance presupposes a person's choice in the matter before receiving such "assistance." Moreover, the promised assistance is with respect to "purchasing items," not the receipt of promotional materials about telephone services.

---

[1] Paragraph 4.4 of the 2014 Franchise Agreement states in its entirety as follows:

> 4.4 **Purchasing and Other Services.** We may offer optional assistance to you with purchasing items used at or in the Facility. Our affiliates may offer this service on our behalf. We may restrict the vendors authorized to sell proprietary or Mark-bearing items in order to control quality, provide for consistent service or obtain volume discounts. We will maintain and provide to you lists of suppliers approved to furnish Mark-bearing items, or whose products conform to System Standards.

Doc. #99-1 at 11.

On top of all this, nothing in Paragraph 4.4 refers to fax communications of any kind (much less to fax advertisements). The only reference to fax communications in the entire 2014 Franchise Agreement appears some eleven pages later in Paragraph 17.3 of the agreement with respect to the issuance of formal legal notices.[2] No reasonable person would associate Paragraph 4.4 with Paragraph 17.3. Nor would a reasonable person contemplate that, by agreeing to the furnishing of a fax number for formal legal notice purposes, the person is agreeing to receive fax advertisements proclaiming "Get Unlimited Data FREE for 12 Months!!!!" Doc. #25-1 at 8.

In short, the 2014 Franchise Agreement does not establish that Gorss expressly invited or gave permission to receive fax advertisements. To be sure, Gorss has filed many similar lawsuits like this one, and I realize that the Eleventh Circuit has reached the opposite conclusion with respect to the same 2014 Franchise Agreement in one of these other lawsuits. *See Gorss Motels, Inc. v. Safemark Systems, LP*, 931 F.3d 1094, 1101 (11th Cir. 2019). In my view, the Eleventh Circuit's reasoning in *Safemark* relies on a mistaken and strained interpretation of the 2014 Franchise Agreement, and the Eleventh Circuit's interpretation runs contrary to the words of the Junk Fax Prevention Act which require no less than an express invitation or permission to receive advertising faxes.[3]

Accordingly, I will deny Sprint's motion for summary judgment to the extent that Sprint argues that any of the nine faxes sent to Gorss were not "unsolicited" within the meaning of the

---

[2] Paragraph 17.3 is a "Notices" provision stating that "Notices will be effective if in writing and delivered: (i) by facsimile transmission with confirmation original sent by first class mail, post prepaid….". Doc. #99-1 at 23. At the end of this provision both contract parties--Super 8 Worldwide, Inc. and Gorse Motels, Inc.—furnished their physical addresses, fax numbers, and email addresses. *Ibid.*

[3] The Eleventh Circuit's decision in *Safemark* is all the more perplexing because it relies solely on the terms of the 2014 Franchise Agreement to affirm the dismissal of one of the counts in the complaint that alleged a fax advertisement in 2013. The definition of an unsolicited fax advertisements requires that there be a "prior" express invitation or permission. The *Safemark* decision does nothing to explain how any permission that Gorss gave in 2014 could apply to a fax that was sent in 2013.

Junk Fax Prevention Act. A genuine fact issue remains for trial as to whether the faxes were unsolicited advertisements.

### *The safe harbor defense and standing as to the Westfax faxes*

Sprint argues that five of the nine faxes (the five sent by Westfax, Inc. allegedly on Wyndham's behalf) are not actionable because they complied with a "safe harbor" defense that the Junk Fax Prevention Act recognizes for certain types of unsolicited fax advertisements. The Act allows for the transmission of an unsolicited fax if: (1) the sender has an established business relationship with the recipient; (2) the recipient voluntarily communicated its fax number to the sender in the context of its established business relationship; and (3) the fax contains an opt-out notice that meets certain statutory requirements. 27 U.S.C. §§ 227(b)(1)(C)(i)–(iii); 47 C.F.R. § 64.1200(a)(4); *see also Gorss Motels v. Am. Tex-Chem Corp.*, 323 F. Supp. 3d 330, 333 (D. Conn. 2018).

Even assuming that the first two safe harbor requirements are satisfied, it is apparent that at least a genuine fact issue remains about whether any of the five faxes provided sufficient opt-out information to satisfy the third requirement of the safe harbor provision. The Act requires that the opt-out notice on an unsolicited fax advertisement must meet several requirements including, without limitation, that the notice be clear and conspicuous and that it include a domestic contact telephone, a fax machine number, and a cost-free mechanism by means of which a recipient may make an opt-out request pursuant to the notice at any time on any day of the week. *See* 47 U.S.C. § 227 (b)(2)(D)(i), (iv) & (v). A genuine fact issue remains whether the five Westfax advertisements included all this opt-out information. For example, none of the opt-out notices specifies a fax machine number to which an opt-out request may be sent.

A genuine fact issue remains as well about whether the opt-out notices were clear and conspicuous. Indeed, the last of the five faxes (dated August 13, 2015) bears completely illegible text where an opt-out provision purportedly appears. *See* Doc. #84 at 5 (¶ 19).

Although Sprint argues that it is entitled to the protection of the Act's safe harbor if it substantially complied with the opt-out notice requirements, there remains a genuine fact issue about whether there was substantial compliance here. *See Career Counseling, Inc. v. Amsterdam Printing & Litho, Inc.*, 2018 WL 3037106, at *9 (D.S.C. 2018) (rejecting substantial compliance argument); *Bais Yaakov of Spring Valley v. Alloy, Inc*., 936 F. Supp. 2d 272, 288 (S.D.N.Y. 2013) (same).

Sprint argues in the alternative that, to the extent that the only disputed issue concerns the the completeness of the opt-out provisions on the five Westfax faxes, the lack of complete opt-out information did not cause Gorss an injury-in-fact sufficient to create standing with respect to these particular faxes. Sprint maintains that Gorss was collecting its faxes (and those sent by others) for purposes of lawsuits, such that it would have made no difference to Gorss whether the opt-out information on the faxes was complete.

The requirements of standing derive from Article III of the U.S. Constitution which limits the judicial power of the United States to adjudication of actual cases or controversies. In order to establish standing to maintain a claim, a plaintiff must plead facts that plausibly show that the plaintiff (1) sustained an injury-in-fact, (2) that defendant's actions caused the injury, and (3) that plaintiff's request for relief would likely redress the injury. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Hu v. City of New York*, 927 F.3d 81, 89 (2d Cir. 2019). An injury-in-fact must be "concrete and particularized" as well as "actual or imminent," rather than "conjectural or

hypothetical." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Numerous courts have correctly concluded that an injury-in-fact arises from the wasted time that a junk fax recipient spends reviewing an unsolicited fax and the use of paper and ink toner in printing the fax advertisements. *See, e.g.*, *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019); *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prod., Inc.*, 2018 WL 733216, at *5 (E.D. La. 2018) (collecting cases); *see also Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 92-94 (2d Cir. 2019) (receipt of unwanted text message in violation of the Telephone and Consumer Protection Act was sufficient injury-in-fact for purposes of Article III standing).

I agree with Gorss that the injury from the alleged junk faxes here cannot be minimized for standing purposes by Sprint's effort to describe it solely as receipt of faxes containing "an incomplete yet informative opt-out notice," Doc. #64 at 36, because this deficiency does not describe Gorss's claim in the first instance (the receipt of an unsolicited fax advertisement that result in wasted materials and time) but rather describes no more than an aspect of Sprint's safe harbor defense (the provision of adequate opt-out information in faxes that would otherwise qualify for the safe harbor defense). Most courts have rejected this effort to bootstrap an argument about the completeness of a defense into an argument about standing. *See Eric B. Fromer Chiropractic, Inc. v. Si-Bone, Inc.*, 2019 WL 3577050, at *4 (N.D. Cal. 2019) (rejecting same argument); *Gorss Motels, Inc. v. AT & T Mobility LLC*, 299 F. Supp. 3d 389, 395 (D. Conn. 2018) (same); *Gorss Motels, Inc. v. Sysco Guest Supply, LLC*, 2017 WL 3597880, at *6 (D. Conn. 2017) (same); *but see St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, 899 F.3d 500, 504-05 (8th Cir. 2018) (concluding that "[a]ny technical violation in the opt-out notices thus did not

cause actual harm or create a risk of real harm" such that the plaintiff "lacked Article III standing").[4]

Nor am I persuaded by Sprint's burden-shifting, blame-the-victim approach to standing. By Sprint's reasoning, Gorss had no injury beyond the very first fax it received with opt-out language. As Sprint would have it, because Gorss could have opted out at that point, its failure to do so not only permitted Sprint to inundate Gorss's fax machine with advertisements forever thereafter but also disabled Gorss from ever complaining about it in a federal court. Sprint cites no well-reasoned precedent that perverts the law of standing in this way to require the victim to ask the perpetrator to stop violating the law before the victim has standing to sue for future violations.

Apart from its argument as to the five Westfax faxes that Gorss lacks constitutional standing under Article III, Sprint further argues that Gorss lacks prudential standing because Gorss is allegedly outside the zone of interests that the Junk Fax Prevention Act was enacted to protect. But "the Supreme Court [has] cast doubt on the entire doctrine of prudential standing, explaining that a court can no more 'limit a cause of action that Congress has created' than it can 'apply its independent policy judgment to recognize a cause of action that Congress has denied.'" *New York State Citizens' Coal. for Children v. Poole*, 922 F.3d 69, 75 (2d Cir. 2019) (quoting *Lexmark v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014)).

Even assuming the continuing vitality of the prudential standing doctrine, Sprint's argument fails because it is just a repackaging of Sprint's claim that Gorss should have taken

---

[4] Cases where the alleged harm involves deprivation of information that forms the basis for the cause of action—as distinct from a defense—are distinguishable. *See, e.g.*, *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019) (no standing in case brought under the Fair Debt Collection Practices Act when plaintiff received a debt collection letter containing text advising the debtor of the method for verifying the debt but lacking statutorily-required language advising her that she must do so in writing).

steps to opt out from receiving more faxes rather than saving the faxes for purposes of bringing this lawsuit. Neither the Constitution nor penumbral principles of prudential standing license judges to disqualify plaintiffs from accessing the lawful remedies that Congress has prescribed to seek recovery for unlawful actions merely because those plaintiffs have engaged in strategically savvy efforts to preserve that access. *See Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) (rejecting prudential standing challenge to standing of plaintiff "testers" strategically posing as renters to detect violations of the Fair Housing Act).

As Judge Easterbrook has observed, "[w]hether it is good public policy to use the cumbersome and costly process of adjudication to resolve disputes about annoying fax ads is for Congress to decide." *Craftwood*, 920 F.3d at 481. And it is equally for Congress to decide if there should be limits on plaintiffs like Gorss who might welcome the receipt of junk faxes to maximize their litigation advantage for purposes of a lawsuit under the Junk Fax Prevention Act.

In any event, Gorss had a fax machine for its legitimate business purposes as a motel at the time that it received the unsolicited faxes in question from 2013 to 2015. Gorss was therefore well within the zone of interests that Congress targeted when it sought to deter the transmission of unsolicited advertising faxes by means of a private right of action against the law's violators. Gorss has prudential standing. *See Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, 367 F. Supp. 3d 93, 115 (S.D.N.Y. 2019) (rejecting argument that plaintiff did not have prudential standing where "the evidence shows that Plaintiff utilized its fax machine for business purposes and received unsolicited fax advertisements during its course of regular business," and concluding that "Plaintiff's filing of other TCPA lawsuits does not remove it from the zone of interests that the TCPA was intended to protect").

Accordingly, I will deny Sprint's motion for summary judgment to the extent that Sprint argues that the five Westfax faxes qualify for the safe harbor defense or, if they do not, that Gorss has no standing to complain about these faxes insofar as they may not qualify for the safe harbor defense solely for lack of complete opt-out information. A genuine fact issue remains for trial as to the applicability of the safe harbor defense.

### Connecticut junk fax statute

Sprint next argues that it is entitled to summary judgment on its state law claims under the Connecticut junk fax statute, Conn. Gen. Stat. § 52-570c(a). The parties agree that the statute's two-year limitations period bars Gorss from relief under the Connecticut law for all but the last of the faxes that was sent on August 13, 2015. Doc. #87. As to this last fax, I agree with Sprint that the plain terms of the Connecticut statute apply only to the person who "shall use a machine that electronically transmits facsimiles . . . to transmit unsolicited advertising material," and Gorss has not adduced any evidence that Sprint itself used any machine to send the last of the faxes on August 13, 2015. Nor does Gorss cite any authority to suggest that the statute should be interpreted as broadly as the federal Junk Fax Prevention Act to impose liability on a company who is the subject or first mover of the fax advertisement. *See* 47 C.F.R. § 64.1200(f)(10) (defining "sender" to include "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement").

Indeed, the Connecticut General Assembly could have drafted the statute to include not only persons who use a machine to send junk faxes but those who cause others to do so on their behalf. It did so—but only for emails, not faxes. The very next subsection of the Connecticut statute, penalizing junk email, provides in relevant part that "[n]o person shall send unsolicited

advertising material by electronic mail, *or cause such material to be sent* by electronic mail . . . "
Conn. Gen. Stat. § 52-570c(b)(1) (emphasis added). The Connecticut junk fax statute
conspicuously lacks this sweeping language, and therefore it should be limited to its terms.
Accordingly, I will grant Sprint's motion for summary judgment to dismiss all of Gorss's claims
under the Connecticut junk fax statute, Conn. Gen. Stat. § 52-570c(a).

### Gorss's sale of motel assets

Sprint argues that Gorss sold its rights to pursue this lawsuit when it sold its motels in
2016 including its fax machine and fax line. But I reject this argument for substantially the
reasons stated in Gorss's opposition: that there is no evidence that the sale of the physical assets
of the motel carried with it the sale of the right to any lawsuit or claim for pre-sale conduct that
resulted in injury to Gorss prior to the sale. *See* Doc. #63 at 51 (describing scope of "premises"
subject to sale). Accordingly, I will deny Sprint's motion for summary judgment to the extent
that it contends that Gorss sold or assigned its rights to pursue this litigation. A genuine fact issue
remains for trial as to whether Gorss sold its rights to this lawsuit.

### Treble damages

Sprint argues that there is no genuine issue of fact to show that it acted "willfully or
knowingly" to violate the Junk Fax Prevention Act and to trigger an award of treble damages.
*See* 47 U.S.C. § 227(b)(3) ("If the court finds that the defendant willfully or knowingly violated
this subsection or the regulations prescribed under this subsection, the court may, in its
discretion, increase the amount of the award to an amount equal to not more than 3 times the
amount available under subparagraph (B) of this paragraph."). But I reject this argument for
substantially the reasons stated in Gorss's opposition: that genuine fact issues remain concerning
the degree to which Sprint's actions were done with knowledge or recklessness as to any

violation of the Junk Fax Prevention Act, especially as to those four faxes that were transmitted from a telephone number associated with Sprint and that lacked any opt-out information.

Accordingly, I will deny Sprint's motion for summary judgment to the extent that it contends that there is no genuine issue of fact as to whether it knowingly or willfully violated the Junk Fax Prevention Act. A genuine fact issue remains for trial as to whether Sprint acted knowingly or willfully.

## CONCLUSION

For the reasons set forth in this ruling, the Court GRANTS IN PART and DENIES IN PART the motion of defendant Sprint Solutions, Inc. for summary judgment. Summary judgment is GRANTED as to all claims under the Connecticut junk fax statute, Conn. Gen. Stat. § 52-570c. Summary judgment is DENIED as to all claims under the federal Junk Fax Prevention Act.

The parties shall submit a joint status report and proposed case schedule within 14 days.

It is so ordered.

Dated at New Haven, Connecticut this 19th day of February 2020.

/s/*Jeffrey Alker Meyer*_____
Jeffrey Alker Meyer
United States District Judge