**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GORSS MOTELS, INC., individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:17-cv-00546-JAM |
| v. | ) ) | |
| SPRINT SOLUTIONS, INC., a Delaware corporation, and JOHN DOES 1-5, | ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE THE MOORE DECLARATION, BAR CERTAIN EXHIBITS ATTACHED THERETO, BAR THE USE OF ANY OTHER UNPRODUCED DOCUMENTS OR DATA, AND STRIKE PORTIONS OF SPRINT'S OPPOSITION TO CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page(s)**

Table of Contents ............................................................................................................................. i

Table of Authorities ....................................................................................................................... ii

Introduction.....................................................................................................................................1

Background ....................................................................................................................................2

      A.   Sprint's Rule 26(a) disclosures and responses to Plaintiff's discovery requests ...........2

      B.   The Moore Declaration and Exhibits B, C, D, E, F, K, and L ......................................3

      C.   Sprint's citation to the Moore Declaration, the Exhibits, and Unproduced Documents and Data in its Opposition to Plaintiff's Motion for Class Certification .................................................................................................................6

Argument ........................................................................................................................................7

I.    Pursuant to Rule 37 (c)(1), the Court should strike the Moore Declaration, bar the Exhibits and other unproduced documents and data referenced in the Moore Declaration, and strike those portions of Sprint's Opposition reliant upon same ................... 7

Conclusion ................................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Arnold v. Krause, Inc.*,
   233 F.R.D. 126 (W.D.N.Y. 2005) ................................................................................. 8, 12

*Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*,
   602 F.2d 1062 (2d Cir. 1979)) ............................................................................................ 9

*Colon v. Linchip Logistics LLC*,
   330 F.R.D. 359 (E.D.N.Y. 2019) ......................................................................... 9, 10, 11

*Design Strategy, Inc. v. Davis*,
   469 F.3d 284 (2d Cir. 2006) ................................................................................ 9, 10, 13

*Downey v. Adloox, Inc.*,
   2018 WL 794592 (S.D.N.Y. Feb. 8, 2018) ...................................................................... 10

*Ebewo v. Martinez*,
   309 F. Supp.2d 600 (S.D.N.Y. 2004) ................................................................................ 8

*Garbinski v. Nationwide Mut. Ins. Co.*,
   2012 WL 3027853 (D. Conn. 2012) ..................................................................... 8, 9, 10, 11

*Haas v. Delaware and Hudson Ry. Co.*,
   282 Fed. App'x 84 (2d Cir. 2008) ................................................................................... 13

*Kam Hing Enters., Inc. v. Wal-Mart Stores, Inc.*,
   359 Fed. App'x 235 (2d Cir. 2010) ................................................................................ 11

*Lujan v. Cabana Mgmt., Inc.*,
   284 F.R.D. 50 (E.D.N.Y. 2012) ........................................................................................ 8

*New World Solutions, Inc. v. NameMedia, Inc.*,
   150 F. Supp.3d 287 (S.D.N.Y. 2015) .............................................................................. 11

*Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alientari S.P.A.*,
   2011 WL 1239867 (E.D.N.Y. Mar. 30, 2011) ................................................................. 13

*Spotnana, Inc. v. Am. Talent Agency, Inc.*,
   2010 WL 3341837 (S.D.N.Y. Aug. 7, 2010) ............................................................ 11, 13

*Williams v. Bethel Springvale Nursing Home, Inc.*,
   2018 WL 1662644 (S.D.N.Y. Apr. 5, 2018 ..................................................................... 11

## **TABLE OF AUTHORITIES**

**Rules**

Fed. R. Civ. P. 26(a) .................................................................................................................. 2, 7

Fed. R. Civ. P. 26(e) ....................................................................................................................... 8

Fed. R. Civ. P. 37(c)(1) ................................................................................... 1, 2, 7, 8, 9, 11, 13

## MEMORANDUM IN SUPPORT OF MOTION TO STRIKE

### Introduction

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In its Opposition to Plaintiff's Motion for Class Certification ("Opposition") (Doc. 136), Sprint filed the Declaration of Jennifer Moore ("Declaration"), signed on June 12, 2020, consisting of 29 paragraphs and Exhibits A through L. (Doc. 140).

Ms. Moore states she is "a Legal Counsel in sales and distribution" for Sprint. (*Id.* ¶ 3). The Declaration is submitted by Sprint in support of certain "individual issues" arguments in opposition to Plaintiff's Rule 23 motion, namely, prior express permission, and the claim that various service provider and other agreements contain mandatory arbitration clauses and/or class action waivers that necessitate individual inquiries as to the proposed class to determine which class members are purportedly subject to said clauses and waivers. (*See* Doc. 136, Opp. at 18, 31-34).

Discovery in this case closed on September 14, 2018. (Doc. 60). Sprint did not disclose Moore in its original or supplemental Rule 26(a) disclosures and did not list her in its original or supplemental interrogatory responses. Moore was not "disclosed" in this litigation until Sprint filed its Opposition to class certification on June 15, 2020, 21 months after the close of discovery, 4 months after the Court denied Sprint's motion for summary judgment, 3 months after the Court denied Sprint's motion to reconsider, and 2 months after Plaintiff filed its motion for class certification. As stated, Sprint relies on the Declaration in support of its "permission," "arbitration," and "waiver" arguments, citing to and relying upon it at pages 4, 18, and 31-34 of

its Opposition. (*See* Doc. 136 at 4, 18, 31-34). Attached to the Declaration as Exhibits B, C, D, E, F, K, and L (all filed under seal, collectively referred to as the "Exhibits") are various agreements that Sprint also failed to produce regarding specific customers.[1] The Moore Declaration also references and relies upon documents and "Sprint data" that has not been produced and which is not attached to the Moore Declaration.

Pursuant to Rule 37(c)(1), the Moore Declaration should be stricken, the Exhibits and all other documents and Sprint data referenced and/or relied upon in the Moore Declaration and by Sprint in its Opposition that have not been produced should be barred, and all portions of Sprint's Opposition reliant on the foregoing should be stricken.

## Background

**A.     Sprint's Rule 26(a) disclosures and responses to Plaintiff's discovery requests.**

Sprint served its Rule 26(a)(1) disclosures on June 30, 2017, attached hereto as Exhibit 1. As to disclosure of witnesses, Sprint stated in part:

> Unknown employees, agents and representatives of Defendant and its affiliates may have discoverable information regarding its relationship with Plaintiff; its relationship with Wyndham; faxes sent on behalf of Defendant; representations by Wyndham relating to the faxing of materials to its affiliates and franchisees; policies and procedures. Investigation continues.

(*Id.* at 3). Sprint supplemented its Rule 26(a)(1) disclosures on March 20, 2018, attached hereto as Exhibit 2. While Sprint specifically identified eight witnesses (including Plaintiff), Ms. Moore was not one of them. (*Id.* at 1-5).

---

[1] While Sprint produced a blank form of Exhibit B, an "Affiliate Enrollment Form" (Bates'-stamped Sprint-Gorss 256-259), and a blank form of Exhibit C, a "Franchise Enrollment Form" (Bates'-stamped Sprint-Gorss 252-255), the actual Exhibits attached to the Moore Declaration as Exhibits B and C are not blank and instead contain the name of an entity defined as an "Affiliate" of Wyndham Worldwide Operations, Inc., *see* Ex. B at 1, and the name of an entity defined as a "Franchisee" of same, *see* Ex. C at 1). Sprint has not previously produced these "filled-in" documents (which are not Bates-stamped), nor has Sprint specifically identified these entities as those it would rely upon to defend this case. Sprint has also not previously produced Exhibits D, E, F, K, or L, which are also not Bates-stamped. These Exhibits are also "filled-in" with the names of entities/individuals that Sprint has failed to previously identify as those it would rely upon to defend this case.

2

As to disclosure of documents, Sprint stated:

In support of its claims or defenses, Defendant may rely upon its Wireless Service Agreement with Wyndham Worldwide Operations, Inc., and its attachments, addenda and amendments; various communications with Wyndham with respect to the Wireless Service Agreement, including the marketing program arising under the agreement; Defendant's policies and procedures; and its contracts and other documents relating to its putative class members. Investigation continues.

(Exhibit 1 at 3). Sprint supplemented this answer, stating in part that it "may rely upon information regarding Wyndham's relationship with Plaintiff and the putative class," and that it "may also rely upon its policies and procedures" and "documents relating to and evidencing Defendant's and its affiliates' relationships with Plaintiff and with the putative class members." (Exhibit 2 at 3). Sprint further stated "[I]nvestigation continues." (*Id.*)

Plaintiff asked Sprint in Interrogatory No. 21 to "identify each fact witness whom you may call as a witness and state in detail the subject matter of each witness's knowledge of the facts in this case." (Sprint's Obj. and Resp. to Pl.'s First Set of Interrogs., attached hereto as Exhibit 3, at 17). Plaintiff asked Sprint in Interrogatory No. 22 to "identify each opinion witness whom you may call as a witness and state in detail the opinion each witness will provide at trial." (*Id.*) Sprint responded to Plaintiff's Interrogatories on September 18, 2017, objecting to Interrogatories 21 and 22 as being "premature" because Sprint had not yet determined whom it would call as a fact witness or opinion witness, and stating that Sprint would "supplement its response(s) when and if appropriate in accordance with the Federal Rules of Civil Procedure." (*Id.* at 17, 18). Sprint supplemented its answers to Interrogatory Nos. 6, and 21 on September 12, 2018. (Sprint's Suppl. Ans. to Pl.'s First Set of Interrogs., attached hereto as Exhibit 4, at 1-2). While Sprint identified two witnesses, Ms. Moore was not one of them. (*Id.*)

    **B.**  **The Moore Declaration and Exhibits B, C, D, E, F, K, and L.**

In her Declaration, Moore states that Sprint offered discounts and special pricing on products and services to corporate affiliates and franchisees of Wyndham, "*i.e.*, business

3

accounts, known 'Corporate Liable' accounts." (Moore Decl. ¶ 6). Moore then concluded that "a review of Sprint's corporate records confirms that from November 2013 to August 2015, Sprint had Corporate Liable contractual relationships with at least 174 entities associated with the Wyndham Wireless Service Agreement," (hereafter, "WSA"). (*Id*. ¶ 8) (emphasis added). The corporate records to which Moore refers and relies upon in ¶ 8 were neither produced by Sprint nor attached to Declaration, and Moore does not identify the 174 "associated entities" referenced in ¶ 8.

In ¶ 9 of her Declaration, Moore states:

> At least 61 of the 174 entities associated with the Wyndham Wireless Services Agreement were customers of Sprint well before March 2007 when the Wyndham Wireless Services Agreement was signed between Sprint and Wyndham. Indeed, several of these date back to 1998. The terms of those prior agreements would vary, depending on when they were executed or initiated and whether they were individually negotiated.

(*Id.*) (emphasis added). Moore's "61 of 174" conclusion in ¶ 9 was never previously disclosed by Sprint, and the agreements to which she refers (other than the WSA) are not specifically identified, are not attached to the Declaration, and were not produced. Moore also fails to identify either the 61 or the 174 "associated entities" referenced in ¶ 9. Moore states that Section 1.2 to of the WSA (Wyndham/Sprint Wireless Services Agreement) "integrates the Product or Service Specific-specific Terms and Conditions with the particular products or services being provided," and:

> These Product or Service Specific Terms would vary depending on what products or services were utilized by the franchisee or affiliate at the particular point in time. The Service-specific terms primarily would have referred to Sprint's General Wireless Terms and Conditions. The Product-specific terms would have been located in the customer's Lease Agreement or Retail Installment Contract or similar document governing the acquisition of other products from Sprint.

(*Id.* ¶ 12) (emphasis added). Moore's conclusions/speculations/opinions in ¶ 12 (*see* underscored terms) were never previously disclosed by Sprint, and the agreements to which she refers are not specifically identified.

4

In ¶ 13, Moore states:

> <u>Based upon a cross-reference</u> of Sprint customer addresses and Wyndham affiliate/franchise addresses, <u>it is evident</u> that Sprint also provided wireless services to <u>dozens if not hundreds</u> of other Wyndham franchisees from 2013 to 2015 who had not associated themselves with the Wyndham WSA. Sprint is <u>only aware of</u> a customer's affiliation with Wyndham if the customer has informed Sprint of such relationship and filled out the enrollment form, such that Sprint documented that association in its systems. If a Wyndham franchisee failed to inform Sprint of the relationship and did not fill out a Franchise Enrollment Form or Affiliate Enrollment Form, then that customer's relationship with Sprint <u>will likely be governed by a different service agreement and either the Sprint business terms and conditions or consumer terms and conditions, depending on which were referenced and integrated by reference into the customer's service agreement</u>.

(*Id*. ¶ 13) (emphasis added). First, ¶ 13 sets forth the results of a "cross-reference" calculation that Sprint has never previously disclosed. Second, ¶ 13 contains inadmissible conclusory and speculative assertions and opinions—"it is evident," "dozens, if not hundreds," "only aware of," and "will likely be governed by a different agreement, depending on which were referenced and integrated by reference into a customer's service agreement." Third, in an attempt to bolster ¶ 13, Moore attaches documents Sprint did not produce in discovery—a July 2013 wireless enrollment of the Ramada Plaza Hotel in Hawthorne, California (Ex. D to the Moore Decl., filed under seal), and a September 2014 wireless enrollment of the Super 8 Nashville (Ex. E to the Moore Decl., filed under seal). (*See Id*., ¶ 14).

Moore next states that Sprint "also had at least 3,288 Individual Liable accounts[2] with individuals "associated" with Wyndham affiliates and franchisees during the November 2013 to August 2015 time period." (*Id*. ¶ 15). Moore states that "Sprint's data regarding these Individual Liable accounts <u>reflect</u> the account holder has a relationship with Wyndham, and <u>may identify</u> the franchise brand such as Days Inn or Baymont Inn, <u>but typically does not identify</u> the particular employer or franchise associated with the account." (*Id*. ¶ 16) (emphasis added). First,

---

[2] Sprint also offered discounts on wireless services and products to individuals associated with Wyndham or its affiliates or franchisees, such as franchise owners, general managers, employees and family members of employees, "*i.e*., customer accounts known as 'Individual Liable' accounts." (*Id*.) (Moore

5

the "Sprint data" to which Moore refers in ¶ 15 has never been produced. Second, the use of the terms "reflect," "may identify," and "typically does not identify" make clear that ¶ 16 is nothing more than speculation.

Moore states that these "customer relationships" began at "varying times." (*Id.* ¶ 18). "For example, according to Sprint's data, approximately 39 accounts were opened in 1998 and 1999, over 600 were opened during the 2000-2005 time period, more than 700 were opened during the 2006-2010 time period, and more than 1,400 were opened during 2011-2013." (*Id.* ¶ 18). Again, the Declaration references data and documents that have never been produced in this case. Moore next states that Sprint's "consumer enrollment forms generally contain some form of mandatory arbitration provision and a class waiver," again relying on a document that Sprint has not previously produced until the filing of the Opposition. (*Id.* ¶ 20; *see id.* Ex. F (filed under seal)).

Moore states that devices or equipment are provided by Sprint to the customer (regardless of whether they had Corporate Liable or Individual Liable account) through a separate agreement, either a Retail Installment Contract or a Lease Agreement. (*Id.* ¶ 26). As examples of the foregoing, Moore attaches the Lease Agreement of Aberdeep Bath, dated March 3, 2015, *id.* ¶ 27, Ex. K (filed under seal), and the Retail Installment Contract of Raymonde Charles, an Individual Liable customer, *id.* ¶ 28, Ex. L (filed under seal). Neither of these documents were produced by Sprint in discovery.

### C. Sprint's citation to the Moore Declaration, the Exhibits, and Unproduced Documents and Data in its Opposition to Plaintiff's Motion for Class Certification.

Notwithstanding its failure to disclose Ms. Moore as either a fact witness or opinion witness, Sprint relies on the Moore Declaration in support of its argument that individual issues

---

Decl. ¶ 6).

exist as to permission based on "the individual contractual relationships many class members had with Sprint." (Opp. at 18) (citing Moore Decl. ¶¶ 6, 8, 13-15, 18). Sprint relies heavily if not exclusively on the Moore Declaration to argue that "many class members" have waived the right to pursue their TCPA claims (as part of a class) based on class action waivers or arbitration clauses in various Sprint agreements. (Opp. at 31-34) (citing Moore Decl. ¶¶ 8, 10, 12-14, 19-21, 23, 26-28). In turn, the foregoing paragraphs of the Declaration rely on previously unproduced documents, as follows: ¶ 10 (Exs. B, C); ¶ 14 Exs. D, E); ¶ 20 (Ex. F); ¶ 27 (Ex. K); and ¶ 28 (Ex. L).

Putting to one side Plaintiff's forthcoming reply to Sprint's permission, arbitration, and class action waiver arguments, which Plaintiff will argue do not create individual issues for several reasons, the fact of the matter is that Sprint is relying on the Declaration of a witness in support of these arguments that it has never previously disclosed, Sprint is relying on Exhibits that is has never previously disclosed, and Sprint is relying on upon other documents and data that it still has yet to disclose. As discussed in detail below, Rule 37(c)(1) provides a remedy for the kind of discovery misconduct engaged in by Sprint here—the Moore Declaration should be stricken, the Exhibits and other unproduced documents and data referenced in the Moore Declaration should be barred, and those portions of Sprint's Opposition that rely on or reference the foregoing should be stricken. (*See* Opp. at 4, 18, 31-34).

## Argument

**I.     Pursuant to Rule 37(c)(1), the Court should strike the Moore Declaration, bar the Exhibits and other unproduced documents and data referenced in the Moore Declaration, and strike those portions of Sprint's Opposition reliant upon same.**

Rule 26(a)(1)(A) requires a party to provide other parties with "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment," and "a copy—or a

7

description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii).

Rule 26(e) provides that a party "must" supplement or correct its disclosures and discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not been otherwise been made known to the parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Rule 37(c)(1) provides: "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See also Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 68 (E.D.N.Y. 2012) (sanctions under Rule 37(c) are not limited to initial disclosure violations but may also be predicated on a party's failure to amend its prior discovery responses).

Under Rule 37(c)(1), a court should exclude evidence provided by a witness that the party did not disclose during discovery if the failure is without substantial justification and is not harmless. "Substantial justification may be demonstrated where there is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request or if there exists a genuine dispute concerning compliance." *Lujan*, 284 F.R.D. at 68 (citation omitted). The purpose of Rule 37(c)(1) is to "prevent the practice of 'sandbagging' an opposing party with new evidence." *Garbinski v. Nationwide Mut. Ins. Co.*, 2012 WL 3027853, at *2 (D. Conn. July 24, 2012) (quoting *Ebewo v. Martinez*, 309 F. Supp.2d 600, 607 (S.D.N.Y. 2004)). Rule 37 sanctions also ensure that a party will not be able to benefit from its own failure to comply with court orders. *Arnold v. Krause,*

*Inc.*, 233 F.R.D. 126, 129-30 (W.D.N.Y. 2005) (citing *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979)).

"In determining whether to exercise its discretion to preclude evidence under Rule 37, courts examine (1) the party's explanation for the failure to comply with the discovery rules; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party as a result of having to address the new evidence; and (4) the possibility of a continuance." *Colon v. Linchip Logistics LLC,* 330 F.R.D. 359, 366-67 (E.D.N.Y. 2019) (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006)(quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)) (hereafter, "*Patterson* factors")  Although "a bad-faith violation of Rule 26 is not required in order to exclude evidence pursuant to Rule 37, it can be taken into account as part of the party's explanation for its failure to comply." *Garbinski*, 2012 WL 3027853, at *2 (quoting *Design Strategy*, 469 F.3d at 296).

Applying the *Patterson* factors to the instant case makes clear the Moore Declaration should be stricken, Sprint should be barred from using Exhibits B, C, D, E, F, K, and K attached to the Moore Declaration, and all other documents and data that have not been produced that were referenced and relied upon in the Moore Declaration and in Sprint's Opposition should be barred.  In addition, those portions of Sprint's Opposition that cite to and/or rely upon the foregoing should be stricken.

First, there is no explanation for Sprint's discovery failures set forth above. This factor weighs heavily in Plaintiff's favor.

Second, while it is Plaintiff's position that Sprint's permission, arbitration, and class action waiver arguments fail at the class certification stage for several reasons, Sprint relies on the Moore Declaration, the Exhibits, and other unproduced documents and data to make these arguments. (*See* Doc. 136, Opp. at 18, 31-34). However, the Moore Declaration is loaded with inadmissible speculation, conclusory assertions, and opinions, as set forth above, reducing its

9

evidentiary importance. *Colon*, 330 F.R.D. at 367 (testimony that contained legal conclusions less important under second *Patterson* factor). Further, Sprint has produced some terms and conditions in discovery. *(See* Doc. 140, Moore Decl., Ex. G). Sprint can attempt to make its arbitration and class action waiver arguments from this document if it so chooses. Accordingly, the importance of the evidence factor "cuts in favor of preclusion." *See Downey v. Adloox, Inc.*, 2018 WL 794592, at *2 (S.D.N.Y. Feb. 8, 2018) (holding the ability to introduce other evidence diminishes the importance of the disputed evidence).

Third, the prejudice factor weighs heavily in favor of Plaintiff. Again, Sprint waited 21 months after the close of discovery, approximately 4 months after the Court denied its motion for summary judgment, 3 months after the Court denied its motion to reconsider, and 2 months after Plaintiff filed its motion for class certification. In *Garbinski*, where the court granted defendant's (Nationwide) motion to strike documents submitted by plaintiff in opposition to defendant's motion for summary judgment, the court addressed the prejudice factor as follows:

> Most importantly, allowing these documents now would be enormously prejudicial to Nationwide. The discovery period has long been closed, even considering the multiple generous extensions granted by the Court. Nationwide has had no opportunity to meaningfully examine these documents prior to its Motion for Summary Judgment. Garbinski appears to assert that because Nationwide obtained disclosure of the exhibits from Garbinski prior to filing its Reply to Plaintiff's Objection to Motion for Summary Judgment and because Garbinski has no objection to reopening [the] deposition of the Plaintiff and inquire about the exhibits in preparation for trial, the level of prejudice is somehow acceptable. However, the prejudice to Nationwide is manifest and allowing Garbinski's deposition to be reopened would only cause further delay and waste additional resources.
>
> The conduct of Garbinski, where he has submitted 2,500 pages of documents that were directly responsive to a previous interrogatory request served by Nationwide, where these documents were attached to a response to a summary judgment motion, where those documents were submitted three months after the close of discovery, and where he offers only a far-fetched and "convoluted excuse" patently does not constitute substantial justification for the delay.

*Id*. at *4-*5. The court excluded the challenged exhibits from being admitted as evidence at any trial, hearing, or motion in the case. *Id*. at *5; *see also Design Strategy*, 469 F.3d at 297 ("The

10

prejudice to the defendants in having to prepare for this evidence would have been severe, as discovery would have to be reopened to determine whether Design's calculations were proper"); *Kam Hing Enters., Inc. v. Wal-Mart Stores, Inc.*, 359 Fed. App'x 235, 238 (2d Cir. 2010) (summary order) (excluding certain testimony "in part because defendants had never produced the underlying documentation on which the spreadsheet summaries were based"); *Williams v. Bethel Springvale Nursing Home, Inc.*, 2018 WL 1662644, at *5 (S.D.N.Y. Apr. 5, 2018) ("Where, as here, an individual is not identified as a potential witness . . . until <u>after</u> the close of discovery, the offending party subverts the purpose of the mandatory disclosures and undoubtedly prejudices their opponent") (emphasis in original).

Here too, Plaintiff has been prejudiced by delay, but not by a 3-month delay, as in *Garbinski*. Instead, Sprint waited 21 months after the close of discovery to identify Ms. Moore via a Declaration supported with documents Sprint had failed to produce in discovery (the Exhibits) and with other documents and data it has failed to produce to this day. Like *Garbinski*, Sprint attached these documents to a response to motion—its Opposition to Plaintiff's motion for class certification. Like *Garbinski*, the prejudice to Plaintiff is "manifest," and there is simply no plausible explanation for Sprint's conduct.

Fourth, the possibility of a continuance factor weighs heavily in favor of preclusion of the Moore Declaration, the Exhibits, and unproduced documents and data. The fact that discovery has been closed for 21 months weighs "strongly against any possibility of a continuance." *Colon*, 330 F.R.D. at 368; *see also Spotnana, Inc. v. Am. Talent Agency, Inc.*, 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 7, 2010) ("the prejudice to *Spotnana* is particularly great because discovery, which closed over fourth months ago, would have to be reopened for Spotnana appropriately to respond to ATA's damages calculations"); *New World Solutions, Inc. v. NameMedia, Inc.*, 150 F. Supp.3d 287, 308-09 (S.D.N.Y. 2015) (finding continuance was not appropriate where the parties were in the middle of a summary judgment briefing schedule and where, at the time the

disputed testimony was submitted, "discovery had been closed for nearly a year") (citations omitted); *Design Strategy*, 469 F.3d at 297 (stating that "weighing heavily on both the prejudice and possibility of continuance factors was the fact that discovery had been closed for approximately one and a half years").

Again, it is Plaintiff's position that Sprint's permission, arbitration, and class action waiver arguments do not create individual issues as to Plaintiff's motion for class certification, and the Moore Declaration, the Exhibits, and the unproduced documents and data cannot salvage those arguments. However, the fact of the matter is that Sprint now seeks to defeat class certification in part through a witness it failed to disclose and documents it failed to produce.

Moreover, the text of the Declaration and the calculations/cross-references/statements contained therein make clear that Ms. Moore reviewed a substantial number of unproduced documents and Sprint data. Deposing Ms. Moore under these circumstances further underscores that a continuance is unfairly prejudicial and not feasible. Sprint would necessarily be required to gather and produce all of the documents and data relied upon by Ms. Moore, as well as the basis for her various calculations. Plaintiff would then be required to analyze same, *i.e.*, review what Plaintiff believes would be thousands of pages of documents and electronic data to address Ms. Moore's various calculations/cross references contained in her Declaration. The delay such an undertaking would engender, as well the substantial cost, is self-evident. A continuance under these circumstances to depose Ms. Moore would simply reward Sprint for its discovery misconduct and further delay this case, causing the Court, the Plaintiff, and the proposed Class to bear the brunt of Sprint's discovery failures. *See Arnold v. Krause, Inc.*, 233 F.R.D. at 129-30 (one of the purposes of Rule 37 is to prevent a party from benefitting from to failure to comply with court orders).

Finally, even assuming *arguendo* that second *Patterson* factor (importance of the evidence) favors Sprint, in cases where the other factors weighed in favor of exclusion, courts

have granted and/or affirmed Rule 37(c)(1) sanctions. *See, e.g., Design*, 469 F.3d at 296 (affirming Rule 37(c)(1) sanctions, stating: "Although the second *Patterson* factor favors Design because Design's evidence of lost profits was essential to proving these damages, all of the other factors weigh heavily in favor of exclusion); *Haas v. Delaware and Hudson Ry. Co*., 282 Fed. App'x 84, 86-7 (2d Cir. 2008) (summary order) (affirming district court's order pursuant to Rule 37(c)(1) striking affidavit even though affidavit "provides evidence of obvious importance" to plaintiff's claim); *Spotnana*, 2010 WL 3341837, at *2 (striking damages calculations pursuant to Rule 37(c)(1), holding that three *Patterson* factors outweighed the importance of defendant's damages calculations evidence); *Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alientari S.P.A*., 2011 WL 1239867, at *5 (E.D.N.Y. Mar. 30, 2011) (striking supplemental damages calculations under Rule 37(c)(1), stating "Because Puglisi has disregarded its discovery obligations without a sufficient explanation, these three factors [*Patterson* factors] outweigh the importance of the damages evidence, even though Puglisi may be denied any recovery under this theory as a result").

In sum, an examination of the *Patterson* factors makes clear that under Rule 37(c)(1) and the case authorities discussed above, the Court should strike the Moore Declaration, bar Sprint from using the Exhibits, bar Sprint from using any other undisclosed/unproduced documents referenced or relied upon in the Moore Declaration, and strike those portions of Sprint's Opposition that reference and/or rely upon the Moore Declaration, the Exhibits and other undisclosed/unproduced documents.

## Conclusion

For the foregoing reasons, the Court should strike the Moore Declaration, bar Sprint from using the Exhibits, bar Sprint from using any other undisclosed/unproduced documents referenced or relied upon in the Moore Declaration, strike those portions of Sprint's Opposition to Class Certification that reference and/or rely upon the Moore Declaration, the Exhibits, and/or

13

other undisclosed/unproduced documents, and grant any other relief the Court deems appropriate.

Dated: July 2, 2020						Respectfully submitted,

								GORSS MOTELS, INC., individually and as the representative of a class of similarly-situated persons

								/s/ Ryan M. Kelly
								Ryan M. Kelly – ct30230
								**ANDERSON + WANCA**
								3701 Algonquin Road, Suite 500
								Rolling Meadows, IL 60008
								Telephone: 847-368-1500 / Fax: 847-368-1501
								rkelly@andersonwanca.com

								Aytan Y. Bellin – ct28454
								**BELLIN & ASSOCIATES LLC**
								85 Miles Avenue
								White Plaines, NY 10606
								Phone: 914-358-5345 / Fax: 212-571-0284
								Aytan.Bellin@bellinlaw.com


## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

						/s/ Ryan M. Kelly