UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GORSS MOTELS INC., *Plaintiff*, <br><br> v. <br><br> SPRINT COMMUNICATIONS COMPANY, L.P. *et al.*, *Defendants*. | No. 3:17-cv-000546 (JAM) |

### ORDER DENYING MOTION TO CERTIFY CLASS

The Junk Fax Prevention Act allows for a federal cause of action against a sender of unsolicited advertising faxes. *See* 47 U.S.C. § 227(b)(1)(C). Plaintiff Gorss Motels Inc. ("Gorss") has filed this putative class action against defendant Sprint Solutions, Inc. ("Sprint") alleging claims based on several fax advertisements that Gorss received from 2013 to 2015. This case is one of many such actions that Gorss has filed in courts nationwide.

Gorss now moves for class certification. Like many courts before me, I will deny the motion on the ground that Gorss has failed to show that issues subject to class-wide resolution will predominate over the individualized issues of whether class members consented to receive the faxes at issue in this case.

### BACKGROUND

The background facts of this lawsuit are recounted in my prior ruling on Sprint's motion for summary judgment. *See Gorss Motels Inc. v. Sprint Commc'ns Co., L.P.,* --- F. Supp. 3d ---, 2020 WL 818970, at *1 (D. Conn. 2020)*, reconsideration denied,* 2020 WL 1303175 (D. Conn. 2020). In summary, Gorss entered into a twenty-year franchise agreement in 1988 to operate a Super 8 motel in Cromwell, Connecticut. The Super 8 motels were a subsidiary of Wyndham Hotel Group ("Wyndham"). The parties amended the franchise agreement in 2009 to extend the

1

franchise to 2014, and then again in September 2014 to enter a new franchise agreement extending the term of the franchise until the end of Gorss's motel business in 2016.

Gorss had a fax machine and it furnished the fax number to Wyndham in the course of its regular franchise business dealings. Gorss used Sprint Communications Company (an affiliate of defendant Sprint Solutions Inc.) for its long-distance telephone services. As a franchisee of Wyndham, Gorss was eligible for discounts from Sprint.

Gorss received numerous fax advertisements for Sprint's telephone services from 2013 to 2015. These faxes were sent as part of Wyndham's promotional activities on behalf of its approved suppliers like Sprint.

Gorss filed this putative class action against Sprint, alleging in relevant part that Sprint sent junk faxes to Gorss and other class members in violation of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005. This statute makes it unlawful to "use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). A "sender" within the meaning of this provision includes "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10). The Act allows for a private right of action by a recipient of an unsolicited fax advertisement against the sender for its violation. *See* 47 U.S.C. § 227(b)(3).

Sprint has previously moved for summary judgment, arguing that the faxes sent to Gorss were not "unsolicited" as the Act requires. The Act defines an "unsolicited advertisement" to mean "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's *prior express invitation or*

*permission*, in writing or otherwise." 47 U.S.C. § 227(a)(5) (emphasis added). I denied Sprint's summary judgment motion, concluding that a genuine fact issue remained as to whether Gorss had given its "prior express invitation or permission" for Sprint to send faxes. *See Sprint*, 2020 WL 818970, at *4. I noted the lack of any conclusive evidence of such consent in the 2014 Franchise Agreement or in any other evidence of record. *Ibid.*[1]

Gorss has now moved for class certification. It seeks certification of a class for its federal claims under the Junk Fax Protection Act as to more than 18,000 faxes that were sent to proposed class members to advertise Sprint products on five different dates from November 2013 to August 2015. See Doc. #129 at 1 (¶¶ 1-2); Doc. #130 at 10-11.[2]

## DISCUSSION

Rule 23 of the Federal Rules of Civil Procedure permits a federal court to certify a class action by which named plaintiffs may litigate claims on behalf of a class of similarly situated

---

[1] My ruling has been misunderstood to hold that "a defendant must essentially 'point to some document in which [an advertising recipient] agreed to receive fax advertisements or was put on notice that by furnishing its fax number it was agreeing to receive fax advertisements' to prove that the defendant had prior express permission." *Gorss Motels Inc. v. A.V.M. Enters., Inc.*, 2021 WL 1163022, at *6 n.8 (D. Conn. 2021) (quoting *Sprint*, 2020 WL 818970, at *2). But my ruling did not suggest that consent must take the form of "some document" rather than any other means of expressing consent. The ruling recited the text of the statute that permission must be given "in writing *or otherwise*," 47 U.S.C. § 227(a)(5) (emphasis added), and then several lines later stated that evidence of such permission was lacking, noting that "*for example*, if Sprint could point to some document in which Gorss itself agreed to receive fax advertisements or was put on notice that by furnishing its fax number it was agreeing to receive fax advertisements, then Sprint could establish that Gorss gave the express permission that the Act requires." *Sprint*, 2020 WL 818970, at *2 (emphasis added). When a court recites open-ended language from a statute ("in writing or otherwise") and then identifies by way of example ("for example") a particular and obvious manner of proof in which the statutory requirement may be met, this is not indicative that the court has imposed a categorical limitation on the open-ended language of the statute. In other words, my ruling did not—"essentially" or otherwise—impose a requirement that a defendant must point to "some document" in order to establish consent.

[2] Gorss proposes defining the class as: "All persons or entities who were successfully sent one or more faxes on or about the dates set forth stating: (1) 'Attention Wyndham Hotel Group owners, general managers and staff members,' 'Sprint Exclusive iPhone Promotion!,' 'Now through December 1 move service from any carrier and receive a new iPhone 5C,' sent November 19, 2013; (2) 'Attention Wyndham Hotel Group owners, general managers and staff members,' 'Get the Samsung Galaxy Tab 3 for $49.99!!!!,' and 'Get 2 GB of data on any Sprint 4G LTE tablet for $15 a month,' sent December 16, 2013; (3) 'Attention Wyndham Hotel Group owners, general managers and staff members,' 'Get Unlimited Data Free for 12 Months!!!!' from 'Sprint,' sent July 1, 2014; (4) 'Attention Wyndham Hotel owners, general managers and staff members,' and 'Get Unlimited Talk, Text and Data for only 54/month' through 'Sprint,' sent February 2, 2015; and (5) 'Switch to the Sprint Family Share Pack' for 'less than 100/mo,' sent August 13, 2015. Doc. #129 at 1-2.

aggrieved class members. "Class actions under Rule 23 of the Federal Rules of Civil Procedure are an exception to the general rule that one person cannot litigate injuries on behalf of another." *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93 (2d Cir. 2018).

Gorss seeks class certification for a damages class action pursuant to Rule 23(b)(3). To do so it must first make four initial showings under Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and then it must make at least two more showings under Rule 23(b)—predominance and superiority. *See Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020) (reviewing requirements).

I will focus here on just one of the requirements: predominance. As to this requirement, Rule 23 states that a court must "find[] that the questions of law or fact common to class members *predominate* over any questions affecting only individual class members." Fed. R. Civ. P. 23(b)(3) (emphasis added). The Second Circuit has explained that "[t]he requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Scott*, 954 F.3d at 512 (cleaned up). "A court examining predominance must assess (1) the elements of the claims and defenses to be litigated, (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief, and (3) whether the common issues can profitably be tried on a class-wide basis, or whether they will be overwhelmed by individual issues." *Ibid.* (cleaned up).

Gorss asserts that the following common issues predominate and can be decided in "one stroke" with common evidence: (1) whether the five faxes are "advertisements" under the Junk

Fax Protection Act and the regulations; (2) whether Sprint is a "sender" of the faxes under the regulations; and (3) whether Sprint's opt-out notices complied with the statutory and regulatory requirements. Doc. #130 at 28. By contrast, Gorss concedes that the "key predominance issue" in cases like this one is whether the Act's requirement of lack of consent ("prior express invitation or permission") to receive the advertising faxes can be decided on a class-wide basis. *Ibid.*[3]

As a general matter, consent is the type of issue that ordinarily requires an individualized determination. For example, in *Flynn v. DIRECTV, LLC*, 2018 WL 3970913 (D. Conn. 2018), I denied class certification for a class of landlords who sought to hold DIRECTV liable for installing its ubiquitous satellite dishes on landlords' property without the landlords' consent. Because "Connecticut law allows for consent to be either oral or written in form," and because "[c]onsent may be given in any number of ways, and consent need not be written down, or even spoken," I found that "it was clear that plaintiffs cannot satisfy the predominance requirement for a class action." *Id.* at *4.

When I previously ruled on Sprint's motion for summary judgment I saw how individualized the consent issue is likely to be. I was asked to rule on the consent issue principally on the basis of an ever-evolving tangle of documents, including successive franchise agreements and amendments from 1988, 2009, and 2014, related application forms, contact forms furnished by Gorss, approved supplier agreements, a Franchise Disclosure Document, a Property Improvement Plan, and a Wireless Service Agreement. Doc. #64 at 9-18; Doc. #75 at 2-10 (¶¶ 3-44). All these documents were set against a background of years and years of continuing business relationships and communications between Gorss, Wyndham, and Sprint. Moreover,

---

[3] For ease of reference, I use the term "consent" as shorthand to refer to the "prior express invitation or permission" standard in the statute. *Cf. A.V.M. Enters.,* 2021 WL 1163022, at *5 (concluding that "'prior express permission' and 'prior express consent' are essentially the same").

because of the significant time gap between specific faxes that Gorss alleged to have been unlawfully sent and the interim accumulation of documents and communications between the parties, I noted how the determination of consent might well differ from one fax to another. *See Sprint*, 2020 WL 818970, at *3 (noting how Sprint's reliance on what it claimed was a consent provision in the 2014 Franchise Agreement was inapplicable to multiple faxes that were sent before the 2014 Franchise Agreement went into effect).

A recent decision in one of Gorss's many other cases additionally illustrates how the issue of consent is highly variable and individual-specific. In *Gorss Motels Inc. v. A.V.M. Enters., Inc.*, 2021 WL 1163022 (D. Conn. 2021), Judge Dooley granted summary judgment against Gorss in favor of a different defendant company (A.V.M. Enterprises, Inc.) that was alleged to have sent junk faxes to Gorss. In deciding that no genuine fact issue remained as to consent, Judge Dooley relied in large part on Section 3.1 of the Property Improvement Plan ("PIP") agreement in which Gorss agreed with Wyndham that "[b]y signing this PIP, I acknowledge and agree that select pieces of this PIP may be provided to our approved vendors for purposes of offering you products and services that are required to complete this PIP." *Id.* at *7. As Judge Dooley found, "the goods listed in the PIP were the exact types of goods sold by A.V.M. and advertised in the six faxes at issue." *Id.* at *8.

Section 3.1 of this PIP was also relied on by Sprint in its summary judgment motion before me. But in light of the fact that Section 3.1 expressly limits its scope of consent only to advertisements for "products and services *that are required to complete this PIP*," Gorss specifically disputed at summary judgment the applicability of this provision on the ground that the PIP did not require Gorss to upgrade its telephone services. The summary judgment record included a copy of the PIP and a punch list of the specific items that Gorss was required to

improve—a lengthy list that does *not* include telephone services of the type offered by Sprint.[4] Therefore, in contrast to Gorss's claims against A.V.M. that were before Judge Dooley, Section 3.1 of the PIP was not potentially dispositive on the issue of consent as to Gorss's claims against Sprint that were before me.

More generally, the application of Section 3.1 of the PIP shows by example how the issue of consent is highly likely to require an individual-specific inquiry within a class action context. To the extent that Sprint would likely argue that Section 3.1 of this or other similar PIP agreements signed by other class member Wyndham franchisees establish that those franchisees consented to receive its advertising faxes, the Court would have to conduct a class-member-specific inquiry to decide if the products and services offered by Sprint are within the scope of the particular items enumerated on the PIP punch list for improvement of each particular class member's property.

Still additional evidence suggests that consent issues would require individual determinations. The declaration of a senior director at Wyndham provides evidence that the franchise agreements of each franchisee are "tailored to the specific property," that "specific terms often vary between franchises," and that the agreements are "subject to negotiations." Doc. #137 at 2 (¶ 7). A former Sprint salesman testified that Sprint had numerous points of contact with Wyndham franchisees in addition to the fax blasts that were transmitted. Doc. #68-2 at 7, 16 (22-23; 58:17-19). The contact between Sprint and franchisees included in-person contact, such as at trade shows and learning programs, where Sprint salespeople would present their products.

---

[4] *See* Doc. #75 at 8-9 (¶ 35 and response) (Gorss's Local Rule 56(a)(2) statement: "Denied that Sprint's goods or services relate in any way to Plaintiff's obligations to update and renovate the property under the PIP"); Doc. #76-2 at 19 (deposition testimony of Steven Gorss about limits of the PIP); Doc. #71-12 at 6-11 (PIP agreement with attached punch list of more than two dozen specific improvement items for Gorss property based upon an inspection by Wyndham and which list does not include telephone service improvement but includes dozens of physical improvements to the property for cleaning, repair, painting, and replacement of items such as carpets, doors, flooring, lighting, and drapery).

*Id.* at 7 (22-23). He testified that the Wyndham affiliates and franchises would ask Sprint to send faxes "so they could literally take the flyer [advertising Sprint discounts to Wyndham affiliates] and put it on their desk…or post it and take it from there." *Id.* at 20 (74-75).

A former Sprint executive responsible for driving corporate sales testified that the Sprint sales team had "a multitude of calls and interactions on a daily basis" with franchises through emails, meetings, tradeshows, and knocking on doors. Doc. #68-3 at 19 (67-68). The franchises would often provide their business cards and names to Sprint salespeople in order to receive follow up information. *Ibid.* A former Sprint regional account manager testified that Wyndham would provide Sprint with a list of hotel owners, and then his job was to make contact and inform them about the Sprint benefits that came with being a franchisee. Doc. #136-3 at 12 (44). He described his role as "the face of Sprint to any Wyndham account in [his] region" and testified that he had direct contact with managers at Wyndham franchises and would communicate with them in person, by email, or by phone to let them know that he was responsible for any accounts the hotel or individual hotel employees set up with Sprint. *Id.* at 10-12 (34-35, 40-44). All of this suggests that a determination of the issue of consent will be specific to each individual class member.

It is true, as Gorss points out, that a defendant cannot "automatically defeat predominance" by suggesting through no more than "speculation" that some potential class members gave consent. *See Bridging Communities Inc. v. Top Flite Financial Incorp.*, 843 F.3d 1119, 1125 (6th Cir. 2016). But as discussed above, it is far from sheer speculation to conclude that consent issues will vastly vary between class members who have had years of business dealings with Wyndham and/or Sprint on the basis of multiple and successive agreements and related documents that set the terms for their dealings and their communications. Put differently,

"this is not a case involving fax blasts to recipients identified on a single 'leads' list obtained from a single source where the issue of consent to fax might be suspect to a classwide determination." *New Concept Dental v. Dental Res. Sys., Inc.*, 2020 WL 3303064, at *9 (S.D. Fla. 2020).

As the Ninth Circuit has recognized, "[a] defendant can produce evidence of a predominance-defeating consent defense in a variety of ways." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931-32 (9th Cir. 2018). Thus, in *True Health*, the Ninth Circuit concluded that the issue of consent defeated a predominance showing for a sub-class in a case under the Junk Fax Protection Act where "consent defenses to these claims would be based on individual communications and personal relationships between [defendant's] representatives and their customers" *Id.* at 932. By contrast, the issue of consent did *not* defeat a predominance showing as to a different sub-class for which consent turned on "simply examining the product registrations and the EULAs [software licensing agreements]" and for which "there is little or no variation in the product registration and the EULAs." *Ibid.*

Although it is Sprint that will bear the burden of proof at trial on consent, *see id.* at 931, it is Gorss that bears the burden at the class certification stage to show predominance, and the predominance inquiry in turn requires evaluation not only of the affirmative elements of a claim but also any defenses such as consent. *See ibid.*; *Myers v. Hertz Corp.*, 624 F.3d 537, 550-51 (2d Cir. 2010). Thus, for class certification purposes "it is irrelevant who has the burden of proof on consent," because "[t]he proper focus instead looks to whether the plaintiff has advanced any feasible method of establishing consent or lack thereof on a classwide basis under the particular facts of the case." *New Concept Dental*, 2020 WL 3303064, at *8. Gorss has not advanced a feasible method to determine consent on a class-wide basis.

9

Because Gorss has not shown that the issue of consent can be resolved on a class-wide basis, I must next consider whether those issues that are subject to class-wide resolution will predominate over the issue of consent which is not amenable to class-wide resolution—that is, "whether the common issues can profitably be tried on a class-wide basis, or whether they will be overwhelmed by individual issues." *Scott*, 954 F.3d at 912. As noted above, Gorss points to the following three issues that may be resolved on a class-wide basis: (1) whether the five faxes are "advertisements" under the Junk Fax Protection Act and the regulations; (2) whether Sprint is a "sender" of the faxes under the regulations; and (3) whether Sprint's opt-out notices complied with the statutory and regulatory requirements. I conclude on balance that the issue of consent will very likely overwhelm those issues that could otherwise be tried on a class-wide basis. A class-wide trial would bog down in disputes about whether particular class members had consented to one or more of the 18,000 faxes that were transmitted for Sprint's services on five different dates over a period of nearly two years.

I agree with the rulings of many other judges who have considered the same kinds of claims filed by Gorss under the Junk Fax Protection Act and who have denied class certification on the ground that Gorss cannot show that class-wide issues predominate over individual issues of consent. *See Gorss Motels, Inc. v. Brigadoon Fitness Inc.,* 331 F.R.D. 355, 360–61, *reconsideration denied,* 2019 WL 5692168 (N.D. Ind. 2019); *Gorss Motels, Inc. v. A.V.M. Enterprises, Inc.*, 2019 WL 4278951, at *4 (D. Conn. 2019); *Gorss Motels, Inc. v. Otis Elevator Co.*, 2019 WL 1490102, at *5 (D. Conn. 2019); *Gorss Motels, Inc. v. Eric Ryan Corp.*, 2019 WL 10351551, at *4 (D. Conn. 2019); *Gorss Motels, Inc. v. AT&T Mobility LLC*, 2019 WL 625699, at *6 (D. Conn. 2019); *Gorss Motels, Inc. v. Safemark Sys., LP*, 2018 WL 1635645, at *5 (M.D. Fla. 2018).

## CONCLUSION

For the reasons set forth in this ruling, the Court DENIES the motion of plaintiff Gorss Motels Inc. for class certification (Doc. #129). The Court DENIES the motion to strike (Doc. #143) as moot because the Court has not relied on the evidence at issue in that motion.

The parties shall submit a joint status report and proposed case schedule on or before May 3, 2021.

It is so ordered.

Dated at New Haven, Connecticut this 31st day of March 2021.

                                              /s/ *Jeffrey Alker Meyer*
                                              Jeffrey Alker Meyer
                                              United States District Judge